Earl Lester, Plaintiff-Appellee, v. Gilbert Hennessey, d/b/a Hennessey Florist, Defendant-Appellant.

Gen. No. 10,306.

Third District.

February 21, 1961.

Alfred F. Newkirk, of Springfield, and Thomas P. Sullivan and Robert E. Pfaff, of Chicago (Giffin, Winning, Lindner & Newkirk, and Thompson, Raymond, Mayer, Jenner & Bloomstein, of counsel) for appellant.

Roberts & Kepner, of Springfield, for appellee.

CARROLL, PRESIDING JUSTICE.

This is a case in which plaintiff seeks damages for personal injuries sustained by him while he was employed by the defendant. It was before this court at the February 1959 term on appeal from a judgment of the circuit court entered on a directed verdict for defendant. On that occasion we held plaintiff had made a prima facie case and reversed the judgment and remanded the cause for a new trial. (20 Ill.App. 2d, 479, 156 N.E.2d 247.) On the second trial the jury returned a verdict for plaintiff in the amount of $15,000. Defendant's post-trial motion was denied on condition that plaintiff file a remittitur of $5,000. The remittitur was filed and defendant has appealed. Pursuant to Sec. 68.1(7) of the Civil Practice Act, plain-

tiff asserts that the amount of the verdict was proper and asks this court to restore the original judgment.

On August 18, 1955, plaintiff, who was employed by defendant, sustained an injury to his heel. Defendant owned and operated the floral shop known as Hennessey Florist. Plaintiff, who was 42 years of age and a full time factory employee, worked for defendant on a part-time basis doing general manual labor. On the day of the accident, the defendant, plaintiff and George Sirtout, another employee of defendant, were engaged in cleaning out an old barn located behind defendant's floral shop. The barn was a two-story structure in which defendant had stored various items common to the floral business, such as old cardboard boxes, wreaths, wire baskets and hangers. Many of these items were old, dirty and dusty, some of them having been in the barn for more than 40 years. The lower floor was cleaned first. Defendant and Sirtout, who were working inside the barn, handed the items to plaintiff who placed those which were to be saved in the alley adjacent to the barn and the remainder which were to be destroyed, on the defendant's dump truck. The defendant determined which articles were to be saved and directed plaintiff as to the disposition thereof. When the lower floor had been cleaned, plaintiff drove the truck away and dumped it. This truck had a flat metal bed with 4 foot sides and a tail gate about 18 inches wide. Upon returning with the truck, defendant backed into the alley alongside the barn and at defendant's directions and signals he parked directly under a window opening in the second floor or loft of the barn. The rear end of the truck was then adjacent to a number of articles which had been moved from the first floor and placed in the alley at defendant's direction. These items included an old wooden barrel. In cleaning out the second floor, the plaintiff stood on the bed of the truck. Defendant and Sirtout brought the items to the

14

window which were either handed down to plaintiff or thrown on the bed of the truck. Plaintiff disposed of these items as directed by defendant, either by placing them in the alley or on the truck. Among the articles stored on the second floor were numerous cardboard boxes in which there were mud dauber nests. A mud dauber is an insect similar to a wasp. When the boxes were disturbed, the mud daubers or wasps would fly around. Whether these boxes were all handed to the plaintiff or whether some were thrown into the truck bed appears to be in dispute. Defendant testified that he threw no boxes down into the truck while plaintiff was in it; that before plaintiff got into the truck he threw some of them directly into the truck; and that Sirtout also threw some of the boxes on the truck but only after warning plaintiff. On his deposition, defendant testified that some of the items from the second floor were dropped on the truck; that items to be saved were handed down but those beyond repair were thrown down as they were to be destroyed anyhow and "it was easier for him to stand out of the way and just drop them into the truck"; and that Sirtout and he were careful so as not to hit plaintiff. Sirtout testified that all items were handed to plaintiff through the window and that he threw nothing on to the truck. Defendant further testified that there were mud daubers around the greenhouse at the time of the occurrence as there were all during the summer; that at different times he told his employees to leave the wasps alone; that he told them "if you don't leave them alone and if you get them cornered and fight them they will sting you"; that he never told this to plaintiff and that prior to the accident he handed plaintiff boxes in which there were mud daubers.

Plaintiff testified that at the time the accident happened he was standing on the tail gate of the truck, which was ½ to ⅔ full; that the debris in the front

15

part of the truck was piled up even with the top of the sideboards; that the debris tapered down to where he stood which was in a clean space about 3 feet from the end of the tail gate; that a wire pedestal was passed down to him; that he turned to throw or put this pedestal in the alley and as he turned back a box lit on the floor of the truck at his feet; that when this box fell at his feet a huge amount of dust came up like it had done previously when other boxes were thrown down; that a number of wasps came out of the box and up into his face; that he threw up his hands and stepped back one step and on to the edge of the barrel and fell backwards; that to avoid being injured by the pieces of metal and wire in the alley, he threw himself to one side as he fell; and that he landed with all his weight on the left foot.

Plaintiff also testified that on the day of the accident the only time he saw any wasps or mud daubers was an instant before the accident when a number of them came up into his face.

Defendant further testified that he did not see the accident occur; that he was sorting boxes over by the east side of the loft at the time plaintiff was injured and that he had been there about ten minutes before he learned of the accident. Sirtout testified that at the time of the accident he was walking towards the window with a box in his hand; that he looked out the opening and saw plaintiff fighting the wasps; that he saw plaintiff take one step backwards; that plaintiff was hollering; and that at that time the defendant was 4 or 5 feet from the window opening.

As a result of his fall plaintiff sustained a fracture of the heel. Since there appears to be a dispute between the parties as to whether the proof on the second trial differs substantially from that appearing in the record on the first appeal, we have found it necessary to detail the evidence to the above extent.

16

Defendant's first and principal contention is that plaintiff failed to introduce any evidence of negligence or proximate cause and therefore the trial court should have directed a verdict in defendant's favor. Despite defendant's insistence to the contrary, we think the issue raised by such contention was determined adversely to him on the first appeal. However, defendant asserts that plaintiff's proof on the second trial differs in important respects from that introduced on the first trial and as a result our prior decision is not binding on this review. The difference pointed out is that at the first trial, defendant's desposition in which he admitted throwing the box in question on to the truck was introduced in evidence but that no such evidence appears in the record on this appeal; that in his original answer defendant admitted that either he or one of his employees threw the box in question on to the bed of the truck but that prior to the second trial defendant filed an amended answer in which he denied throwing the said box on to the truck.

The negligence allegations of the complaint are in substance that defendant (a) negligently failed to properly inspect the boxes when he knew the likelihood of wasps being in them (b) negligently failed to warn the plaintiff of this condition (c) negligently threw boxes into the truck without warning the plaintiff and when plaintiff was not looking (d) negligently directed plaintiff to work in a truck that was overloaded and stand on the tailgate under a hazardous condition and then threw boxes directly on the truck without warning plaintiff (e) negligently threw a box containing wasps directly in front of plaintiff, and (f) permitted his employee, meaning Sirtout, to throw a box containing wasps, in front of plaintiff.

■ ■ Defendant's motion for a directed verdict preserves for review only a question of law as to whether there is any evidence, standing alone and

17

taken to be true, together with the inferences which may be legitimately drawn therefrom, which fairly tends to support the verdict of the jury, and before such question may be resolved against the plaintiff's verdict, it must appear not only that the facts bearing on such question are not in dispute but also that reasonable men would draw the same inference from such undisputed facts. It is also the rule that in considering such a motion the trial court should consider the evidence most strongly in plaintiff's favor and give it every reasonable intendment favorable to the plaintiff. Seeds v. Chicago Transit Authority, 409 Ill. 566, 101 N.E.2d 84.

Keeping the foregoing rule in mind, we have reviewed the evidence for the sole purpose of determining whether or not there is any evidence tending to sustain the plaintiff's cause of action. Considering the evidence most strongly in plaintiff's favor, we think it shows that some of the boxes which were being moved, i.e. passed down or thrown, at the time of the occurrence contained wasps or mud daubers; that plaintiff did not know of their presence; that defendant, although knowing that the boxes contained mud daubers, did not so inform plaintiff; that defendant did not tell plaintiff of their dangerous propensities although giving such warning to Sirtout and other employees; that prior to the occurrence defendant dropped or threw articles from the loft into the bed of the truck while plaintiff was standing on it; that the wasps would sting if they were fought; that plaintiff fought them; that the box in question landed at plaintiff's feet; that dust came up from it when it landed; that dust had risen from other boxes thrown on the truck; that when the box in question landed the plaintiff's position in the truck was such that a step backward would cause him to fall; and that be-

18

cause of the load of debris on the truck plaintiff in doing his work was required to stand at the place where he was when he stepped backward and fell.

██ When the foregoing facts and circumstances, together with the reasonable inferences to be drawn therefrom are considered in the light most favorable to plaintiff, we think, as we did on the occasion of the former appeal, that the question as to whether defendant was guilty of any of the negligent acts with which he was charged in the complaint was a fact question for the jury.

Defendant insists that plaintiff's case must fall because the record is devoid of proof that defendant or Sirtout threw the box from the loft. This would appear to be but another way of asserting that plaintiff may not recover because of his failure to produce a witness who could testify that he actually saw defendant throw the box in question from the loft. To sustain the negligence charges plaintiff was not required to produce such direct proof. One of the negligent acts charged was the throwing of the box and plaintiff's burden of establishing such fact of negligence was met by proof of such facts and circumstances as would afford a reasonable inference that the box in question was thrown from the loft window by the defendant.

The operation in which plaintiff and defendant were engaged was the moving of debris including the box in question from the second floor of the barn. There is evidence that boxes containing debris were thrown from the loft window on to the bed of the truck while plaintiff was standing on it; that because of the debris in the truck plaintiff was standing within 3 feet of the end of the tail gate; that the loft window was 12 feet above the ground and that when the box in question fell at plaintiff's feet it created a large

19

amount of dust the same as other boxes had done when thrown on to the truck; that no persons other than defendant and Sirtout were in the loft or were engaged in handling boxes or other debris which was being moved.

Under the foregoing facts and the reasonable inferences to be drawn therefrom the question whether defendant or Sirtout threw the box at plaintiff's feet and whether in so doing he was negligent was one of the fact questions to be determined by the jury. It in no way differed from the other issues of fact raised by the complaint allegations and defendant's denial thereof. The jury were not bound to believe that the box was not thrown from the loft merely because the defendant so testified.

Defendant's second contention is that the verdict is contrary to the manifest weight of the evidence and consequently the trial court should have granted a new trial. The only argument advanced in support of this point is that the jury in returning a verdict for plaintiff must have rejected the uncontroverted testimony of Sirtout and defendant in favor of unfounded speculation as to how the accident happened. Admittedly, the jury were not bound to accept the testimony of these witnesses as conclusively establishing the fact that the box in question was not thrown on to the truck from the loft window. Such testimony merely raised a disputed fact question to be resolved by the jury. As previously indicated, we are convinced that there was ample evidence to warrant the submission of the issue of negligence to the jury and we are likewise of the opinion that the verdict reached is not contrary to the manifest weight of the evidence.

■ Defendant's next contention is that the trial court erred in refusing to give the jury what is commonly referred to as the unavoidable accident instruc-

20

tion. It is the settled law in Illinois that only where there is evidence that the plaintiff was injured through accident alone not coupled with negligence is it proper to give an unavoidable accident instruction. Streeter v. Humrichouse, 357 Ill. 234, 191 N. E. 684; Crutchfield v. Meyer, 414 Ill. 210, 111 N.E.2d 142; Williams v. Matlin, 328 Ill. App. 645, 66 N.E.2d 719. That this case was tried on the theory of negligence is obvious. The jury were instructed that the issues which they were to determine were made by the negligence allegations of the complaint and defendant's denial thereof. The court also gave the jury an instruction tendered by defendant that contributory negligence on the part of plaintiff would prevent recovery in the case. The jury were also informed by defendant's tendered Instruction No. 5 that if both plaintiff and defendant were guilty of negligence then they should find defendant not guilty. Defendant, while asserting that unavoidable accident was one of his theories of defense fails to point to the evidence which supports such theory. Since the jury were instructed on the issues in the case, defendant's tendered unavoidable accident instruction could only tend to divert their attention from such issues to others finding no support in the evidence.

Defendant's reply brief cites a number of cases in which the court held that the proof justified the giving of an unavoidable accident instruction. We have examined these authorities and find them inapplicable to the situation in the instant case where there is no evidence of pure accident not coupled with negligence. The trial court's refusal to give the instruction in question was not error.

Defendant's final contention is that the verdict was so grossly excessive as to indicate passion or prejudice on the jury's part; that it was not cured by the

$5,000 remittitur and that therefore a new trial should be granted. On the other hand the plaintiff insists that the verdict was not excessive and that no remittitur should have been required.

The evidence pertaining to damages shows that plaintiff sustained a comminuted fracture of the heel bone which extended into the joint between the heel and ankle. He was hospitalized for 3 weeks and was unable to resume work until about 4½ months after the accident. The treating doctor testified that his last examination was on September 14, 1959; that there was limitation of movement of the heel, foot and ankle; that this condition was permanent; and that an operation which he recommended would relieve some of the pain but would not improve the motion of the foot. Plaintiff testified that he has a constant ache in his foot; that the pain increases as he puts weight on it; and that his stride is impaired because his foot does not bend properly. Special damages shown amount to approximately $3,400.

The rule is that a verdict for personal injuries will not be disturbed by a reviewing court unless so palpably excessive as to indicate the jury acted from some improper motive. Andres v. Green, 7 Ill.App.2d 375, 129 N.E.2d 430; Perrine v. Charles T. Bisch & Son, 346 Ill. App. 321, 105 N.E.2d 543; Garner v. Burns Mid-Town, Inc., 346 Ill. App. 162, 104 N.E.2d 506.

The amount of damages to be fixed is a matter within the discretion of the jury and in the instant case we do not think the award made can be said to be of such magnitude as to show that its action was prompted by any such improper motive. The mere fact that the trial court required a remittitur does not necessarily establish or require this court to hold that the amount of the verdict was so grossly excessive as to warrant the conclusion that the jury were moved by passion or prejudice. I.L.P. Appeal

22

and Error, Sec. 783; Gleason v. Cunningham, 316 Ill. App. 286, 44 N.E.2d 940.

Upon careful examination of the record we are of the opinion that the verdict was not so grossly excessive as to require the granting of a new trial and that the trial court did not err in ordering the remittitur.

The judgment of the circuit court is affirmed.

Affirmed.

REYNOLDS and ROETH, JJ., concur.